**Charles SIERS, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 13, 1998.

Decided Feb. 8, 1999.

William Ruzzo, Asst. Public Defender, Wilkes-Barre, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

Before FRIEDMAN, J., KELLEY, J., and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Charles Siers (Siers) petitions for review from the June 5, 1998, decision of the Pennsylvania Board of Probation and Parole (Board) that denied his request for administrative relief of a June 24, 1997 Board order recommitting him as a convicted parole violator. We affirm.

On November 26, 1979, Siers plead guilty to three counts of robbery in Philadelphia County and was sentenced to serve 6 to 12 years. (Certified Record "C.R." at p. 1). Thereafter, on February 28, 1985, Siers was

granted parole, effective March 11, 1985.[1] (C.R. at p. 5). ·

In 1986, Siers was arrested for and convicted of attempted murder in Florida. He was sentenced to serve 21 years at the Florida Washington Correctional Institution (FWCI). Accordingly, the Board lodged a detainer against Siers on April 10, 1986. (C.R. at p. 10).

On June 29, 1987, Siers wrote a letter to the Board requesting that it hold his parole violation hearing in absentia. Siers also requested that if the Board recommitted him, that it order his sentence to run concurrently with his Florida sentence. (C.R. at p. 12A). The Board acknowledged Siers' letter and informed him that it would not conduct a revocation hearing in his absence because it would deprive him of the opportunity to present any favorable evidence on his behalf. (C.R. at p. 12B). The letter also informed Siers that Pennsylvania law prohibits convicted parole violators from serving parole violation time concurrently with any new sentence imposed as a result of the new crime committed while on parole. (*Id.*).

On March 3, 1997, FWCI informed the Board that Siers was being released on parole on March 11, 1997. (C.R. at p. 14). Siers' parole from FWCI resulted from the United States Supreme Court's decision in *Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997). (*Id.*). In that case, the Supreme Court determined that the Florida statute canceling prisoners' early release credits after their award had resulted in the prisoners' release from prison violated the ex post facto clause of Article I, Section 10 of the U.S. Constitution.[2]

On March 18, 1997, Siers was returned to Pennsylvania. A parole revocation hearing was scheduled for April 24, 1997; however, Siers requested that the hearing be rescheduled so that he could retain counsel. A full panel hearing was held on June 24, 1997, at which time Siers testified on his own behalf. (C.R. at pgs. 21–58).

On July 21, 1997, the Board recommitted Siers as a convicted parole violator and ordered him to serve his unexpired term of 4 years, 11 months, and 7 days. (C.R. at p. 59). Siers sought administrative relief, which the Board denied on June 5, 1998. (C.R. at pgs. 61–64, 67–68). This appeal followed.

Siers raises two issues for our review: 1) whether the Board erred in failing to provide him with a timely revocation hearing and 2), whether the Board erred in failing to credit him with the 902 days that he served in FWCI in violation of his rights. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Houser v. Pennsylvania Board of Probation and Parole*, 675 A.2d 787 (Pa.Cmwlth.1996).

In his first argument on appeal, Siers maintains that his revocation hearing was untimely. We agree with the Board that Siers has waived this issue. In his petition for review, Siers alleged that 1) the Board failed to give him proper credit for time served and 2), the Board improperly calculated his new maximum incarceration date. We decline to address Siers' allegation that the Board failed to provide him with a timely revocation hearing since it was not included in the stated objections in his petition for review nor fairly comprised therein. Pa. R.A.P. 1513(a); *Dorsey v. Pennsylvania Board of Probation and Parole*, 132 Pa. Cmwlth. 476, 573 A.2d 628, 629 n. 1, *petition for allowance of appeal denied*, 525 Pa. 649, 581 A.2d 575 (1990).

In his second argument on appeal, Siers maintains that his sentence should be credited with the 902 days that he served in FWCI in violation of his constitutional rights. Siers relies on the U.S. Supreme Court's decision in *Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) as support for his

---

1. Siers was previously denied parole on February 15 and October 16, 1984 because he had accumulated numerous misconducts while in prison. (C.R. at pgs. 3, 4).

2. Article I, Section 10 of the United States Constitution provides that "no State shall ... pass any ... ex post facto Law." U.S. CONST. art. I § 10.

argument. The *Lynce* decision directly applied to Siers and therefore, a brief recitation of the facts of that case is appropriate.

In 1983, the Florida Legislature enacted a series of statutes that authorized the department of corrections to award early release and other provisional credits to prison inmates when the population of the state prison exceeded predetermined levels. In 1986, Lynce pleaded nolo contendere to attempted murder and was sentenced to 22 years (8,030 days) in prison. In 1992, he was released from prison because he had accumulated five different types of early release credits totaling 5,668 days. Of that total, 1,860 were awarded as a result of prison overcrowding.

Shortly after Lynce's release, the Florida Legislature canceled provisional overcrowding credits for certain classes of inmates, including those convicted of attempted murder. The State Attorney General interpreted this repealing statute to be retroactive and accordingly, credits for inmates still in custody were canceled and re-arrest warrants were issued for those offenders previously released. Consequently, Lynce was re-arrested.

In 1994, Lynce filed a petition for a writ of habeas corpus, alleging that the retroactive cancellation of the provisional credits violated the ex post facto clause of the U.S. Constitution. The District Magistrate concluded that the revocation of the provisional credits did not violate the ex post facto clause because the sole purpose of the credits was to alleviate prison overcrowding. Accordingly, the District Magistrate recommended that Lynce's petition be denied. The District Court adopted the District Magistrate's recommendation, and the Court of Appeals for the Eleventh Circuit denied a certificate of probable cause. The U.S. Supreme Court granted certiorari because the Court of Appeals for the Tenth Circuit reached a different conclusion on similar facts in *Arnold v. Cody*, 951 F.2d 280 (10th Cir.1991).

In *Lynce*, the Supreme Court ultimately determined that Florida's 1992 cancellation of the provisional credits violated the ex post facto clause because it impermissibly lengthened the period of time that an offender would have to spend in prison. The Supreme Court did not look to the intent of the law but rather at what effect it had on the offender.

As a result of the *Lynce* decision, Siers, petitioner in the case *sub judice*, was released from FWCI on March 11, 1997. Pursuant to the Board's April 10, 1986 detainer, Siers was released to the Pennsylvania authorities. He now argues that in the interest of fundamental fairness and due process, he is entitled to receive 902 days of credit for the time he served at FWCI.

In *United States ex rel. Smith v. Rundle*, 285 F.Supp. 965 (E.D.Pa.1968), the District Court addressed a similar issue. In 1951, Smith was found guilty of burglary and larceny in Delaware County, Pennsylvania and was sentenced to 10–20 years. In 1962, while on parole, Smith pleaded guilty to and was found guilty of a series of robberies, aggravated assaults, and attempted rapes in Philadelphia County. Accordingly, the Board revoked Smith's parole on the 1951 sentence and ordered him to begin to serve the time remaining on that sentence before beginning to serve the 1962 sentence.

Thereafter, in 1964, Smith successfully challenged his 1951 sentence and was granted a new trial. Smith pleaded guilty to those charges and received a suspended sentence.

In 1965, Smith sought a writ of habeas corpus, seeking to have the 1962 sentence credited with the time he served on the 1951 sentence. The District Court concluded that the Constitution does not authorize "penal checking accounts" and that an offender was not entitled to credit where the sentences resulted from unrelated offenses and were imposed by different counties.

This Court has favorably cited *Rundle* and has consistently applied its principles. As Judge Williams stated in *Krantz v. Pennsylvania Board of Probation and Parole*, 86 Pa.Cmwlth. 38, 483 A.2d 1044, 1048 n. 5 (1984),

> [w]e duly note that due process does not require that a criminal defendant receive credit on a subsequent unrelated sentence for time served on a prior invalid sentence. *See United States ex rel. Smith v. Rundle*, 285 F.Supp. 965 (E.D.Pa.1966[sic] ).

There is no constitutional requirement that the time a defendant served on a prior invalid sentence must be credited against a subsequent valid sentence arising from unrelated offenses as the Constitution does not authorize penal checking accounts.

*See also DeVault v. Pennsylvania Board of Probation and Parole,* 111 Pa.Cmwlth. 412, 533 A.2d 1133 (1987); *Caldwell v. Pennsylvania Board of Probation and Parole,* 102 Pa. Cmwlth. 287, 518 A.2d 5 (1986), *petition for allowance of appeal denied,* 515 Pa. 610, 529 A.2d 1083 (1987). We find that the holding in *Rundle* is equally applicable to those cases involving unrelated sentences imposed by sister states.

Siers was incarcerated in Florida for an offense totally unrelated to the Pennsylvania charges. Pennsylvania's active involvement did not increase the amount of time that Siers spent in Florida's custody and did not begin until his March 11, 1997 release from FWCI. *See generally Duval v. United States,* 385 F.Supp. 302, 305 (E.D.Pa.1974)("[t]he triggering device for credit against a prisoner's ... sentence is not merely the involvement of [a sister state's] government, but rather involvement of the [sister state] that has an effect on the time a prisoner spends in ... custody"). As one court aptly noted, to allow a person to accumulate early release credits

> would mean that the situation could be created wherein a person might have several years of prison time to apply to a sentence for a crime that he has not as yet committed or for which he has not been prosecuted.

*Rundle,* 285 F.Supp. at 968 (quoting *Bauers v. Yeager,* 261 F.Supp. 420, 424 (D.N.J.1966)).

Furthermore, the administration of a state's penal system is a matter of state law. *Singleton v. Shafer,* 313 F.Supp. 1094 (E.D.Pa.1970). Under Pennsylvania law, the period of time that a convicted parole violator is required to serve is to be computed from and begin on the date that he is taken into custody to be returned to a correctional facility as a parole violator. Section 21.1 of the Act commonly known as the Parole Act, Act of August 6, 1941, P.L. 861, *as amended,* added by Section 5 of the Act of August 24,

1951, P.L. 1401, 61 P.S. § 331.21a. Pennsylvania does not require that an offender be given credit for time served on a prior invalid sentence on a subsequent unrelated offense. *Caldwell,* 102 Pa.Cmwlth. 287, 518 A.2d 5 (1986). Accordingly, we conclude that the Board did not err in determining that Siers is not entitled to 902 days of credit for time served in a sister state on an unrelated offense.

Based upon the foregoing, we affirm.

### ORDER

AND NOW, this 8th day of February, 1999, it is hereby ordered that the order of the Pennsylvania Board of Probation and Parole dated June 5, 1998, is affirmed.